The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| PRINCIPAL LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>MEGANN MALIA HILL, individually and as personal representative of the ESTATE OF JEFFREY THOMAS HILL,<br><br>Defendant. | CAUSE NO. 2:21-cv-01716-MJP<br><br>PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO LCR 55(b), F.R. Civ. P. 55(b)<br><br>NOTE ON MOTION CALENDAR: June 30, 2022 |

Plaintiff Principal Life Insurance Company ("Principal Life"), by its undersigned counsel, respectfully moves for entry of judgment against Defendant Megann Malia Hill, individually and as personal representative of the Estate of Jeffrey Thomas Hill (collectively "Defendant") for failure to plead or otherwise defend in accordance with LCR 55(b) and in support thereof states as follows:

## I. INTRODUCTION

As the Court knows, Principal Life filed this action seeking rescission of life insurance coverage on Defendant's deceased husband's ("Decedent") life under the terms of a voluntary group life insurance policy, Group Policy No. GL 1087314 ("Group Policy") issued by Principal Life to Oasys, Inc. due to Decedent's intentional and/or material misrepresentations



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

and omissions on his enrollment application. A copy of the Group Policy is attached to Plaintiff's Amended Complaint (Dkt. #6) as Ex. A. (Dkt. #6-1) After personal service of the Amended Complaint on Plaintiff by the Whatcom County Sheriff on February 25, 2022 (Dkt. #16), Plaintiff was required to appear and file a responsive pleading by March 18, 2022 pursuant to Rule 12(a)(1)(A)(i). Plaintiff has neither appeared nor filed a responsive pleading by March 18, 2022 and indeed has still not done so. On March 31, 2022, Principal Life moved for entry of default (Dkt. #17, 18) and a default order was entered on April 19, 2022. (Dkt. #19) Plaintiff has not appeared and/or attempted to vacate the order. Principal Life now requests entry of a judgment of default in its favor and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## II. FACTUAL BACKGROUND

Decedent began working full time for Oasys on November 17, 2017 and incident to his employment, he participated in Oasys' employee welfare benefit plan with voluntary life insurance coverage funded by Principal Life pursuant to the terms of the Group Policy. (Dkt. #6, ¶¶3, 6) On November 15, 2019, Decedent enrolled for voluntary group life insurance benefits on his life in the amount of $300,000.00 ("Proceeds"). (Dkt. #6-1, 6, ¶¶7) On his enrollment form, he designated Defendant as his primary beneficiary. (Dkt. #6-2) By signing the enrollment form, Decedent declared that "the information I have completed on this enrollment form is complete and true." (Id.)

Because the requested life insurance amount exceeded the guaranteed issue amount under the Group Policy, Decedent was required to submit a Statement of Health with his enrollment form. (Dkt. #6-1, Ex. A, p. 36) In completing the Statement of Health, Decedent answered "No" to all medical underwriting questions as reflected in the Statement of Health filed under seal on February 16, 2022. (Dkt. #10) In reliance on the information provided by Decedent on his enrollment form and on the Statement of Health, Principal Life approved



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

Decedent for the requested voluntary tern life coverage in the amount of $300,000.00 effective January 1, 2020. (Dkt. #6-3)

Decedent died on October 27, 2020. (Dkt. #11) Decedent died during the Group Policy's two year contestability period for individual coverage as follows:

> **Article 5 – Individual Incontestability**
>
> All statements made by any individual insured under this Group Policy will be representations and not warranties. These statements may not be used to contest an insured person's insurance unless:
>
> a. The insured person's insurance has been in force for less than two years during the insured's lifetime; and
>
> b. The statement is in Written form Signed by the insured person; and
>
> c. A copy of the form, which contains the statement, is given to the insured or the insured's beneficiary at the time insurance is contested.

[…]

(Dkt. #6-1, p. 23; Ex. A) .

After receiving notification of Decedent's death on November 19, 2020, Principal Life received life claim information from Oasys on November 30, 2020 and on December 1, 2020, Principal Life received Hill's Life Claim Information form. (Dkt. #6, ¶¶15, 16) On January 26, 2021, Principal Life approved Hill's claim in the amount of the guaranteed issue amount of $20,000.00 and sent the check with correspondence dated January 28, 2021 to Hill. (Dkt. #6, ¶17)

As part of its review of Defendant's entitlement to the benefits in excess of the guaranteed issue amount, which were subject to Decedent's Statement of Health, Principal Life requested Decedent's medical records. (Dkt. #18) During its review of Decedent's medical records, Principal Life discovered significant discrepancies between the information contained in the medical records and the information provided by Decedent on his Statement of Health on November 15, 2019 as set out in its July 20, 2021 correspondence. (Dkt. #12) Specifically, Decedent did not disclose numerous consultations with physicians, follow ups, diagnostic tests,



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

treatment, medications, symptoms and medical conditions on the Statement of Health he and Defendant completed and executed on November 15, 2019. (Dkt. #10, 12)

When signing the Statement of Health, Decedent and Defendant were both notified that "[i]n order to properly underwrite and consider your request for coverage, we must collect information to determine if you […] qualify for insurance with Principal Life Insurance Company. We will do this by having you complete this Statement of Health. […]" (Dkt. #10) By signing the Statement of Health, Decedent and Defendant both represented that the "information, statements, and answers on this form, and any attachments, are complete and true to the best of my knowledge. They are a part of this request for coverage under the group policies. […]" (Id.)

By signing the Statement of Health, Decedent and Defendant both further represented that they "have read, or had read to me, the questions and responses and realize any false statements, omissions or material misrepresentations regarding age or health information could cause coverage, if issued, to be cancelled as never effective." (Id.) They were further informed that "[i]t is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits." (Id.)

Decedent died on October 27, 2020, within eleven months of the effective date of the voluntary life insurance coverage on his life (Dkt. #11), made written misrepresentations and withheld information concerning his medical history on the Statement of Health required for the issuance of the requested amount of voluntary life insurance coverage on his life for the purpose of inducing Principal Life to act favorably on his request for coverage.

In underwriting and issuing the life coverage, Principal Life reasonably relied on the belief that Decedent had truthfully completed the Statement of Health and had disclosed his complete medical history to Principal Life. Decedent and Hill's non-disclosure and misrepresentation of his medical history materially affected and increased the contractual risk



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

and hazard assumed by Principal Life in underwriting and issuing life insurance coverage to Decedent in an amount in excess of the guaranteed issue amount. Had Principal Life known the true facts concerning Decedent's medical history at the time of underwriting his coverage, it would have declined coverage it issued to Decedent as specifically set out by underwriter Mary Utterson in her underwriting opinion, which is requested to be filed under seal.

As such, on March 24, 2021, Principal Life contacted Defendant and explained to her that upon review of Decedent's medical records Principal Life had identified discrepancies to his answers on the Statement of Health and had Decedent provided correct answers Principal Life would have declined to issue the coverage requested. On July 20, 2021, after it had completed its review, Principal Life sent correspondence to Defendant, notifying her of its denial of her claim for additional benefits and its rescission of Decedent's voluntary group life coverage in excess of the $20,000.00 guaranteed issue amount under the Group Policy as if never effective, refunding premium payments made in the amount of $247.80 and requesting she sign a rescission agreement enclosed with the correspondence. A copy of the Statement of Health signed by the Decedent was enclosed with Principal Life's correspondence. (Dkt. #12)

The refund check indicated that "[e]ndorsement of this check constitutes agreement of rescission of voluntary term life coverage(s) under Policy No. 1087314 which is thereafter void and of no effect. This check is tendered in full satisfaction of any claims under said policy." (Dkt. #6-4) Defendant has not cashed the check and has refused to sign the rescission agreement. Defendant has also failed to request administrative review of Principal Life's denial as required under the Group Policy and the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 *et seq.* ("ERISA"). On December 31, 2022, Principal Life filed this lawsuit and on February 4, 2022, Principal Life filed an amended complaint. (Dkt. #6)

## III. LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, default judgment is a two-step process: an entry of default judgment must be preceded by an entry of default. *See* Fed. R. Civ.



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

P. 55, *see also Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). The general rule of law is that upon entry of default, the factual allegations of the complaint, save for those concerning damages, are deemed to have been admitted by the defaulting party. *See Pope v. United States*, 323 U.S.1, 12, 65 S. Ct. 16 (1944); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); *see also* 10 Wright & Miller, *Federal Practice and Procedure* §2688, at 280, 284. Support for this general rule is found in Rule 8(b)(6) of the Federal Rules of Civil Procedure:

> (6) *Effect of Failing to Deny*: An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegations is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided.

Fed. R. Civ. P. 8(b)(6); *see also Jones v. Islam*, No. 2:20-cv-11038-JS-JPR, 2021 U.S. Dist. LEXIS 150450 (C.D. Cal. July 7, 2021).

The Ninth Circuit has set forth seven factors to be considered by courts in reviewing a motion for default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72.

"If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded." *Landstar Ranger, Inc. v. Parth Enters.*, Inc., 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (quoting 10A Charles Alan Wright et al., Federal Practice and Procedure § 2688, at 63 (3d ed. 1998).

## IV. LEGAL ARGUMENT

### A. LCR 55(b)

Principal Life's motion for default judgment complies with LCR 55(b) in that this Court previously granted a motion for default against Defendant pursuant to LCR 55(a) (Dkt. #19)



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

and Principal Life's motion is accompanied by a declaration identifying the pleading on which default was entered, when it was entered, that Defendant is not an infant or incompetent person and that the Servicemembers Civil Relief Act does not apply. (Kersting Decl., ¶¶ 3-6, Ex. 1). As Defendant has neither appeared personally nor through a representative, no service of this motion on the defaulting party or notice of this motion to the defaulting party is required. *See* LCR 55(b)(4).

**B. The *Eitel* Factors**

**1. Possibility of Prejudice to Principal Life**

"The first *Eitel* factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered." *Landstar Ranger*, 725 F. Supp.2d at 920. Prejudice can be shown if denying default judgment would leave a plaintiff without a remedy. *See id.*

Principal Life will suffer prejudice unless default judgment is granted. Despite having been provided with a full explanation and a rescission agreement in an attempt to amicably resolve this matter (Dkt. #12), Defendant's refusal to execute the agreement or otherwise communicate necessitated the filing of the rescission complaint, in response to which Defendant remained uncooperative. In light of Defendant's demonstrated unwillingness to cooperate, her failure to execute the rescission agreement, communicate with Principal Life or otherwise cooperate and litigate this case on the merits, Principal Life will likely not be able to obtain the relief to which it is entitled. As a result, this factor weighs in favor of default judgment.

**2. Merits of Claims and Sufficiency of Complaint.**

The next two *Eitel* factors go to Plaintiff's likelihood of success on the merits. Under these two factors, plaintiffs seeking default judgments must "state a claim on which the[y] may recover." *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). "In considering the sufficiency of the complaint and the merits of the plaintiff's substantive claims, facts alleged in the complaint not relating to damages are deemed to be true upon



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

default." *Bd. of Trustees of Sheet Metal Workers v. Moak*, No. C 11-4620 CW, 2012 U.S. Dist. LEXIS 156381 (N.D. Cal. Oct. 31, 2012).

Rescission under Washington law is governed by RCW 48.18.090. The statute contains two subsections, the first pertaining to 'oral and written misrepresentation(s) … made in the negotiation of an insurance contract' and the second to statements made in writing by the insured in an application for life or disability insurance. *See* RCW 48.18.090. In the context of ERISA governed benefits such as the one here, the Ninth Circuit has clarified that state law rescission provisions are preempted by ERISA, 29 U.S.C. §1144(a) and do not come within the reach of ERISA's savings clause as they only codify long-standing principles of contact law. *Security Life Ins. Co. of Am. v. Meyling*, 146 F.3d 1184, 1187-1191 (9th Cir. 1998), *see also Davies v. Centennial Life Ins. Co.*, 128 F.3d 934 (6th Cir. 1997); *Tingle v. Pacific Mut. Ins. Co.*, 996 F2d 105, 108-09 (5th Cir. 1993).

ERISA, however, has been found to provide a right to rescission for insurance contracts entered into under a false representation of health. *Meyling, supra,* at 1191; *see also Davis*, 128 F.3d at 943-44, *Hauser v. Life Gen. Sec. Ins. Co.*, 56 F.3d 1330, 1335 (11th Cir. 1995) (assuming right of rescission exists under ERISA-created federal common law); *Negoski v. Country Life Ins. Co.*, 843 F. Supp. 372, 374-74 (N.D. Ill. 1993).

Applying principles of common law and state law, an agreement can be rescinded when it is entered into on the basis of a fraudulent or material misrepresentation. *See* Restatement (Second) of Contracts §164 (1981). The Ninth Circuit has clarified that "to establish materiality in the insurance context, the misstatements must have either affected insurability or the amount of premium paid by the insured. In essence, materiality is determined by the misrepresentation's effect on the insurer's informed acceptance of risk, i.e., would knowledge of the true facts have influenced the insurer in deciding whether to accept the risk or in assessing how much premium should be paid for undertaking the risk." *Meyling, supra,* at 1192. Washington law agrees. *See Karpenski v. Am. Gen. Life Co. LLC,* 999 F. Supp. 2d 1235, 1244 (W.D. Wash. 2014)



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

("Washington … provides that a misrepresentation is material if it changes the nature of the risk such that the insurance carrier either would not have issued the policy or would have charged a higher premium had the truth been known.")

In the present case, as underwriter Utterson pointed out in her underwriting review, Principal Life would not have issued coverage to Decedent in an amount beyond the guaranteed issue amount had it known his actual health history in accordance with its underwriting guidelines, which set out that the risk connected to issuing life insurance to an individual with Plaintiff's condition was not acceptable. (Kersting Decl., ¶7)

Accordingly, Principal Life is entitled to rescind the life coverage beyond the guaranteed issue amount issued to Decedent and has met the second and third elements.

**3. The Sum Of Money At Stake In The Action.**

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

Principal Life seeks $9,942.00 in attorneys' fees and $532.32 in costs. This amount would be the entirety of Defendant's liability, is reasonable for the work completed, and is not a large sum of money. *See Moore v. Cisneros*, No. 1:12-CV-00188-LJO, 2012 U.S. Dist. LEXIS 177044, at *4 (E.D. Cal. Dec. 13, 2012) (noting that an award of $10,119.70 on default judgment, including attorney's fees and costs, was "not a relatively large sum of money, nor does it appear unreasonable in light of the allegations in the complaint"). For these reasons, the fourth *Eitel* factor favors entry of default judgment against Defendant.

**4. Possibility of Dispute Concerning Material Facts**

"The fifth *Eitel* factor examines the likelihood of disputes between the parties regarding the material facts surrounding the case." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1060 (N.D. Cal. 2010). Defendant has filed no answer to the Complaint and it is settled



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

law that "[w]here a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). As discussed, Principal Life alleged that Decedent made material misrepresentations on the statement of health he completed to obtain insurance coverage above the guaranteed issue amount, which was issued by Principal Life in reliance on Decedent's answers. Defendant has declined to defend this case on the merits and has therefore admitted all material facts alleged in the Complaint. *See Geddes*, 559 F.2d at 560. Principal Life has also submitted documents to support its allegations. Therefore, the possibility of dispute concerning material facts is remote. Accordingly, this factor weighs in favor of default judgment.

**5. Possibility of Excusable Neglect.**

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *PepsiCo*, 238 F. Supp. 2d at 1177. This factor favors a default judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. See *id*. (concluding this factor favored default judgment where defendant was properly served and contacted plaintiffs' counsel to discuss the matter). Here, given that Defendant was properly served, (*see* Proof of Service, Dkt. #16) after receiving several letters from Principal Life regarding this matter and having been contacted by counsel for Principal Life after service of the lawsuit (*see* Kersting Decl. ¶3), this factor weighs strongly in favor of default judgment.

**6. Policy Favoring Decisions on the Merits.**

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering a default judgment." *Craigslist*, 694 F. Supp. 2d at 1061. Although "[c]ases should be decided upon their merits whenever reasonably possible[,]" *Eitel*, 782 F.2d. at 1472, "[u]nder Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action[,]" *PepsiCo*, 238 F. Supp. 2d at 1177. Notwithstanding the strong policy in favor of decisions on the merits, where a



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

defendant's failure to appear and respond "makes a decision on the merits impractical, if not impossible," default judgment is appropriate. *Id*. Here, Defendant failed to timely respond and has demonstrated unwillingness to participate in this action. (*See* Kersting Decl. ¶¶3, 4) This final *Eitel* factor therefore does not weigh against entering default judgment.

**7. Conclusion as to *Eitel* Factors.**

In sum, the *Eitel* factors weigh in favor of entry of default judgment on Plaintiff's rescission claim.

## V. REMEDIES

Principal Life seeks declaratory relief, and attorneys' fees and cost.

### A. Declaratory Relief

Principal Life seeks a declaration, declaring the life insurance coverage beyond the guaranteed issue amount rescinded and void *ab initio* as a result of Decedent's material misrepresentations on his statement of health. Principal Life's amended complaint establishes that Decedent misrepresented his medical history on the statement of health, that Principal Life relied on the misrepresentations in issuing coverage and that it had known the true facts regarding Plaintiff's medical history, it would have declined to issue coverage in an amount beyond the guaranteed issue amount. Declaratory relief against Defendant, declaring the life insurance coverage beyond the guaranteed issue amount issued on Decedent's life rescinded and void *ab initio* is therefore appropriate. Principal Life requests that this Court enter judgment in its favor, declaring the life insurance coverage beyond the guaranteed issue amount issued on Decedent's life rescinded and void *ab initio*.

### B. Attorneys' Fees and Costs.

Principal Life seeks an award of attorneys' fees in the amount of $9,942.00 and costs in the amount of $532.32. (Kersting Decl., ¶¶20, 21, Ex. 5, 6)



WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

**1. Attorneys' Fees**

Since its enactment in 1974, ERISA has contained a fee shifting provision, providing for the possible recovery of attorneys' fees and costs by either party to the action:

> In any action under this subchapter…by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. §1132(g)(1).

In evaluating a fee request, a court asks whether the party seeking an award has attained "some success on the merits," *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 256 (2010), which is not at issue here. Additionally, a court considers the five factors set out in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980): (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Id.* In light of Defendant's refusal to sign the rescission agreement provided by Principal Life, necessitating the filing of this lawsuit and her subsequent failure to defend the lawsuit on the merits, the five factors weigh in Principal Life's favor.

Federal courts apply the lodestar method as a "guiding light" in arriving at a reasonable fee amount, thus, determining (1) a ***reasonable*** hourly rate and (2) the number of hours ***reasonably*** expended. *See Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007); *D'Emanuele v. Montgomery Ward & Co., Inc.*, 904 F.2d 1379, 1383 (9th Cir. 1990).

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1985); *compare Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545 (9th Cir.



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

1992). The party seeking fees must further show that the hours expended on the litigation were reasonable. Ms. Kersting has 20 years of experience and billed her time at a rate of $325.00 an hour. Mr. Torrence has 31 years of experience and billed his time at a rate of $300.00 an hour. Ms. Delay has 4 years of experience and billed her time at a rate of $235.00 an hour. (*See* Kersting decl. ¶¶9, 14, 15, 18)

This Court has previously approved hourly rates higher than the ones sought here. *See Zones, Inc. v. Evergreen Info Tech. Servs*, No. 2:17-cv-00457-RAJ, 2019 U.S. Dist. LEXIS 219790 (W.D. Wash. Dec. 18, 2019) (approving hourly rate of $490.00 for attorney with 19 years of experience); *Todd R. v. Premera Blue Cross Blue Shield of Alaska*, 2019 U.S. Dist. LEXIS 72998 (W.D. Wash. April 30, 2019) (approving rate of $600.00, $290.00 and $250.00 for attorneys in ERISA matter); *Lehman v. Nelson,* No. C13-1835RSM, 2018 U.S. Dist. LEXIS 131954, 2018 WL 3727600, at *1-2 (W.D. Wash. Aug. 6, 2018) (approving rates for attorneys in an ERISA matter of $665.00, $460.00, and $385.00 per hour and a rate for paralegals of $220.00 per hour); *Paulson v. Principal Life Ins. Co.*, No. 16-5268 RJB, 2017 U.S. Dist. LEXIS 177967 (W.D. Wash. Oct. 26, 2017) (approving hourly rate of $500.00 for attorney with approximately 20 years of experience); *Lauer v. Longevity Med. Clinic PLLC*, C.13-0860 JCC, 2016 U.S. Dist. LEXIS 59382 (W.D. Wash. May 4, 2016) (approving hourly rate of $500.00). This Court has further approved rates of $350.00, $295.00 and $290.00 per hour for associate attorneys. *Zones, Inc., supra (*citing *Whotoo, Inc. v. Dun & Bradstreet, Inc.*, C15-1629-RAJ, 2017 U.S. Dist. LEXIS 129895, at *2 (W.D. Wash. Aug 15, 2017)). The rates sought in this mater are comparable and, thus, reasonable.

**2. Costs.**

Principal Life further seeks an award of $527.36 in costs, as permitted by 29 U.S.C. §1132(g)(1), incurred in this matter.



**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)

## VI. CONCLUSION

For all of the reasons set out above, Principal Life respectfully requests that this Court grant its motion and enter judgment by default in favor of Principal Life, declaring the life insurance coverage issued on Decedent's life in excess of the guaranteed issue amount rescinded and void ab initio and awarding Principal Life its reasonable fees and costs incurred in the litigation of this matter in the total amount of $10,474.32.

DATED: June 30, 2022

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: */s/Hailey K. Delay*
Hailey K. Delay, WSBA #54887
1700 7th Avenue, Suite 2100
Seattle, WA 98101
206.709.5900 (Main)
206.709.5901 (Fax)

*Attorney for Plaintiff Principal Life Insurance Company*



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
1700 7TH AVENUE, SUITE 2100
SEATTLE, WA 98101
206.709.5900 (MAIN)
206.709.5901 (FAX)